**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **RAYMOND C. JACKSON, 01570860,** | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **No.3:13-CV-2271-N** |
| | ) | |
| **WILLIAM STEPHENS, Director, Texas** | ) | |
| **Dept. Of Criminal Justice, Correctional** | ) | |
| **Institutions Division,** | ) | |
| **Respondent.** | ) | |


**FINDINGS, CONCLUSIONS AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

This case has been referred to the United States Magistrate Judge pursuant to 28 U.S.C.

§ 636(b) and a standing order of reference from the district court.  The Findings, Conclusions and

Recommendation of the Magistrate Judge are as follows:

**I.  Procedural Background**

On April 16, 2009, Petitioner was convicted of aggravated sexual assault of a child under

fourteen years of age, enhanced.  *State of Texas v. Raymond C. Jackson* , No. F-0860876-H

(Crim. Dist. Ct. No. 1, Dallas County, Tex., April 16, 2009).  He was sentenced to twenty years

in prison.  On February 23, 2012, the Fifth District Court of Appeals affirmed the conviction and

sentence.  *Jackson v. State*, No. 05-10-00763-CR (Tex. App. – Dallas 2012, no pet.).  Petitioner

did not file a petition for discretionary review.

On July 4, 2012, Petitioner filed a state petition for writ of habeas corpus.  *Ex parte*

*Jackson*, Application No. 72,678-02.  On March 20, 2013, the Court of Appeals denied the

**Findings, Conclusions and Recommendation**
**of the United States Magistrate Judge**          Page -1-

petition without written order.

On June 7, 2013, Petitioner filed this federal petition pursuant to 28 U.S.C. § 2254.  He argues:

1.      He received ineffective assistance of trial counsel when counsel:

      (a)      failed to file a motion for new trial;

      (b)      failed to object to an incorrect jury charge;

      (c)      failed to obtain a running objection to Clarence Littleton's testimony;

      (d)      failed to timely file a notice of appeal;

      (e)      failed to object to the suppression of favorable evidence; and

      (f)      failed to put on a defense;

2.      He received ineffective assistance of appellate counsel when counsel:

      (a)      failed to challenge the validity of the warrant;

      (b)      failed to challenge the sufficiency of the evidence;

      (c)      failed to challenge perjured testimony; and

      (d)      failed to challenge the suppression of favorable evidence; and

3.      He is actually innocent.

## II.  Factual Background

The following factual background is taken from the opinion of the Fifth District Court of Appeals.

Appellant and Claudia, C.F.'s mother, were engaged to be married in 2002. Appellant moved in with Claudia and C.F., but the engagement ended in November 2002. Appellant moved out of the house but returned for a few weeks in January 2003.  He then moved out permanently.

In 2008, C.F. revealed that appellant had sexually abused her.  At trial, thirteen-

year-old C.F. testified the abuse took place when she was eight-years-old and detailed the incident of abuse. She testified that, while her mother was at work, appellant took C.F. into her mother's bedroom and threw her onto the bed. He stood in front of her and took off his clothes before overpowering C.F. and ripping off her shirt and pants. Appellant touched her "upper body," that is her chest and stomach. He also touched her "bottom areas," where she "pee[s]" and "poo[s]." Appellant rubbed his hands in a "back and forth" motion and C.F. screamed for him to stop. Appellant then took off her underwear and got on top of her and used his penis to touch her vagina in a moving motion. Appellant also used his penis to touch C.F.'s chest and stomach. C.F. remembered she felt "nasty." After the incident, appellant threatened to hurt Claudia if C.F. ever said anything. C.F. later told her grandmother about the incident when she was twelve years old.

Courtney Golden, a forensic interviewer with the Dallas Children's Advocacy Center, testified she conducted the interview with C.F. following C.F.'s outcry. Golden stated, "Sensory details are important because when a child gives sensory details, it really shows how they felt when the abuse was happening." Golden testified C.F. was able to provide "sensory detail," specifically, C.F. "indicated it felt nasty. That would be a detail about how it felt on her body." Golden further testified she believed C.F. was credible.

C.F.'s grandmother, Linda, testified that C.F. first made her outcry about appellant's sexual abuse to her. Linda confirmed C.F. described how appellant rubbed his penis up and down on her vagina. Claudia confirmed that Linda arrived at her home later that evening, which is when Claudia first learned about the abuse.

Andrea Schultz, an expert on the topic of delayed outcry, explained that a delayed outcry is common with children who have been abused. Schultz indicated that it is "very common" for a child, even years later, to remember the details about the sex abuse but forget some of the surrounding details. She also stated anger is a sign indicating that suggestibility is unlikely.

In addition to the testimony regarding the abuse of C.F., testimony regarding appellant's and Claudia's prior relationship was also elicited. During this case in chief, appellant called Claudia as a hostile witness. During that testimony, Claudia discussed her tumultuous relationship with appellant, the mental illness warrant she filed against him in 2003, and the protective order she sought against him in 2008.

Appellant's counsel continued by asking Claudia about a 2004 television news report entitled "Parol (sic) Officers Gone Wild." Claudia explained she was a probation officer at the time and that the news report accused her of having dated appellant while he was a parolee in violation of her department's policy. Claudia denied the reporter's allegations and believed appellant played a "very intricate part" in the investigation, leaving her "[m]ostly perplexed and angry." She also admitted that just four months prior to accusing Appellant of sexually abusing C.F., a court had denied her 2008 request for a

protective order.

The prosecutor sought clarification as to why a 2003 protective order had been granted against appellant.  Claudia testified that appellant had thrown her on the couch, left a bruise on her neck, had broken into her house, put a knife to her throat and said he would "kill" her, and had showed up uninvited with a shot gun.  In addition, Claudia explained that in 2005, appellant violated the protective order when he held a large pocket knife and said, "I'll kill you."  She further testified appellant had driven by her house in the Fall of 2007, "shooting the finger . . . you know, to say that, you know, 'I'm going to get you.'"

During the course of Claudia's testimony, appellant lodged no objection and requested no limiting instructions.

Following Claudia's testimony, the prosecutor called Clarence Littleton, Claudia's co-worker, as a rebuttal witness and the following exchange took place:

[Prosecutor]:   Do you recall a time when Appellant came to visit your office in search of Claudia []?

[Littleton]:   Yes.

[Prosecutor]:   Tell me what happened.

[Littleton]:   He saw me outside.  He started talking with me, telling me about Claudia had broken off the wedding that they were supposed to have, and I think she broke it off maybe a week or something before they were to get married.

[Defense]:   Objection, relevance.  Hearsay.

[Prosecutor]:   Your Honor, he's a rebuttal witness.  He's directly rebutting what Defense Counsel just go into with [Claudia], and the Defendant's statement.

[The Court]:   What is it rebutting?

[Prosecutor]:   It's rebutting what Defense Counsel said with [Claudia]; and furthermore, Your Honor, the Defendant's own statement, a statement against party opponent.

[Defense]:   The Defendant hasn't testified, Judge.

[The Court]:   Overruled.  Go ahead.

[Prosecutor]:   Go ahead.

[Littleton]:    Okay.  After – he was upset about Claudia breaking off the wedding, and it was at that point he told me he would kill her and everybody else.

I at that point – when he left me, he was headed down to see the parole supervisor, who was John King.  I went in and made a phone call to that office.  They told me they were already aware of it.

* * *

[Prosecutor]:   At some point he said he'll kill her, he'll kill everybody?

[Littleton]:    Yes.

[Prosecutor]:   And then after that he told you that he had a shotgun that he kept in the bushes?

[Littleton]:    Yes.

[Prosecutor]:   And that he was waiting for Claudia [] to come out and see if she was with anybody?

[Littleton]:    Yes.

* * *

[Prosecutor]:   When he said waiting to see if she'd come out with anybody –

[Littleton]:    Anybody – well, I guess anybody that he thought she was dating.

[Prosecutor]:   So, he –

[Defense]:      Renew my objection to hearsay and relevance, Judge.

[The Court]:    Overruled.

Appellant did not request a limiting instruction after his relevance and hearsay objections were overruled and did not cross-examine Littleton.

At the close of trial, the jury convicted appellant of aggravated sexual assault of a child younger than fourteen years of age, and the trial court sentenced him to twenty years' imprisonment.

*Jackson v. State*, slip op. at 1-5.

### III.  Discussion

1.      **Standard of Review**

The pertinent terms of the Antiterrorism and Effective Death Penalty Act of 1996 (the

AEDPA), 28 U.S.C. § 2254 provide:

> (d)      An application for writ of habeas corpus on behalf of a person in custody pursuant
>
> to the judgment of a state court shall not be granted with respect to any claim that
>
> was adjudicated on the merits in State court proceedings unless the adjudication of
>
> the claim –
>
> > (1)      resulted in a decision that was contrary to, or involved an unreasonable
> > application of, clearly established Federal law, as determined by the
> > Supreme Court of the United States; or
> >
> > (2)      resulted in a decision that was based on an unreasonable determination of
> > the facts in light of the evidence presented in a State court proceeding.

*See* 28 U.S.C. § 2254(d).  Under the "contrary to" clause, a federal habeas court may grant the

writ of habeas corpus if the state court arrives at a conclusion opposite to that reached by the

United States Supreme Court on a question of law or if the state court decides a case differently

from the United States Supreme Court on a set of materially indistinguishable facts.  *Williams v.*

*Taylor*, 529 U.S. 362, 380-84 (2000).  Under the "unreasonable application" clause, a federal

court may grant a writ of habeas corpus if the state court identifies the correct governing legal

principle from the United States Supreme Court's decisions, but unreasonably applies that

principle to the facts of the prisoner's case.  *Id*.

2.      **Ineffective Assistance of Counsel**

Petitioner claims he received ineffective assistance of counsel.  To sustain a claim of

ineffective assistance of counsel, Petitioner must show that: (1) counsel's performance was deficient; and (2) the deficient performance prejudiced the defense so gravely as to deprive Petitioner of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In *Strickland*, the Court stated that "[j]udicial scrutiny of counsel's performance must be highly deferential" and "every effort [must] be made to eliminate the distorting effects of hindsight." *Strickland*, 466 U.S. at 689. Courts, therefore, must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*.

Even if counsel is proven deficient, a petitioner must prove prejudice. To prove such prejudice, Petitioner must show "a reasonable probability that the result of the proceedings would have been different but for counsel's unprofessional errors." *Crane v. Johnson*, 178 F.3d 309, 312 (5th Cir. 1999) (citing *Strickland*, 466 U.S. at 694). "[T]he mere possibility of a different outcome is not sufficient to prevail on the prejudice prong." *Id*. "Rather, the defendant must demonstrate that the prejudice rendered sentencing 'fundamentally unfair or unreliable.'" *Id*. (quoting *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993)).

A.     **Motion for New Trial**

Petitioner claims his counsel should have filed a motion for new trial because the arrest warrant was invalid. Petitioner alleges Detective Baum admitted on the stand that he signed the warrant for arrest, and that a judge did not sign it. A review of Detective Baum's testimony, however, does not show that he made these statements. Detective Baum stated a judge signed the arrest warrant, but he did not know which judge signed it because he could not read the signature. (Trial Tr. Vol 3 at 117.) Petitioner's claim is without merit.

Petitioner also claims the arrest warrant was invalid because Detective Baum changed the

date of the offense, and he never spoke to C.F. or her mother regarding a specific date for the offense.  The record shows defense counsel cross-examined Detective Baum regarding the offense date.  (*Id*. at 116-17.)  Detective Baum testified that C.F. made her outcry approximately four years after the offense, and she was not able to provide a specific date for the offense.  (*Id*. at 134-36.)  Detective Baum testified he estimated the offense date based on C.F.'s statements that the offense occurred approximately four years prior to her outcry, and that the offense occurred during the school year.  (*Id*.)  Petitioner has failed to show his counsel was ineffective for not raising this claim.

### B.       Jury Charge

Petitioner claims his counsel failed to object when the court used the "wrong" jury charge.  Petitioner does not explain what portion of the jury charge was wrong, why it was wrong or how it prejudiced him.  Petitioner's conclusory allegation should be denied.  *See Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983) (emphasizing that mere conclusory allegations do not raise constitutional issues in habeas proceedings).

### C.       Running Objection

Petitioner argues his counsel should have made a running objection to the "inflammatory, irrelevant testimony of Clarence Littleton."  (Pet. at 6.)  The record shows defense counsel objected to Littleton's testimony four different times, and that two objections were sustained.  (Trial Tr. Vol. 4 at 175-180.)  Petitioner has failed to show that a running objection would have been any more effective than the four specific objections that counsel made.  Petitioner's claims should be denied.

**D.      Defense**

Petitioner claims his counsel "failed to put on a defense for petitioner." (Pet. at 6.)

Petitioner states C.F.'s mother, Claudia, accused two other men of similar charges, but counsel

failed to call these men as witnesses.  He also complains that counsel did not call any witnesses

for the defense.  Petitioner, however, has submitted no evidence that there was any witness who

would have testified favorably for the defense at trial.  *See Alexander v. McCotter*, 775 F.2d 595,

602 (5th Cir. 1985) ("for the appellant to demonstrate the requisite *Strickland* prejudice, the

appellant must show not only that this testimony would have been favorable, but also that the

witness would have testified at trial.").  Petitioner's claim should be denied.

**E.      Suppression of Evidence**

Petitioner argues his counsel was ineffective for failing to argue against the state's motion

in limine.  Petitioner claims the following evidence from the motion in limine should have been

admitted:  (1) a letter Claudia wrote to the judge who denied her motion for protective order; (2)

evidence that Claudia personally knew Sergeant Bishop of the Dallas Police Department; (3)

evidence regarding prior dealings between defense counsel and Claudia; (4) evidence that

Petitioner was willing to take a lie detector test; (5) any mention of Claudia running for public

office; (6) evidence that Claudia made C.F. dance naked and prostitute herself; (7) evidence that

Claudia had accused two other men of molesting C.F.; and (8) evidence regarding Claudia's past

employment as a parole officer and her interview with Channel 4 News regarding the "Parole

Officers Gone Wild" news report.  Both the prosecutor and defense counsel, however, stated they

had not seen any letter that Claudia allegedly wrote to the judge in her protective order case.

(Trial Tr. Vol 3 at 49.)   The prosecutor explained that she listed this letter  in her motion in

limine because Petitioner referred to a letter in his statement. (*Id*.)  Similarly, the prosecutor stated she did not know who Sergeant Bishop was, and that he had nothing to do with Petitioner's case.  (*Id*.)  The record does not reflect the nature of any prior dealings between defense counsel and Claudia, and Petitioner has submitted no evidence regarding this claim and/or how the evidence would have been helpful to the defense.  Defense counsel also stated he had no intention of admitting any evidence regarding Claudia running for public office.  (*Id*. at 48.)  Petitioner has failed to show that any of this evidence was relevant to the case.   Petitioner has also failed to show there was any evidence that Claudia made C.F. dance naked and prostitute herself, or that Claudia had accused two other men of molesting C.F.  Finally, defense counsel successfully argued that evidence regarding Claudia's past employment as a parole officer and her interview with Channel 4 News was admissible.  (*Id*. at 48.)  Petitioner's claims are without merit.

### F.      Notice of Appeal

Petitioner claims his counsel was ineffective for failing to file a timely notice of appeal. Petitioner, however, is unable to show that he was prejudiced by his counsel's actions.  The Court of Criminal Appeals granted Petitioner the right to file an out-of-time appeal.  On October 21, 2010, Petitioner filed his direct appeal.  On February 23, 2012, the Fifth District Court of Appeals affirmed Petitioner's conviction and sentence.  Petitioner's claims should be denied.

### 3.      Appellate Counsel

### A.      Validity of the Warrant

Petitioner claims Detective Baum admitted on the stand that he signed Petitioner's arrest warrant, rather than a judge signing it.  Petitioner alleges his counsel was ineffective for failing to

raise this claim on appeal.  As discussed above, the record disputes Petitioner's claim that

Detective Baum stated he signed Petitioner's arrest warrant.  Petitioner's claim should be denied.

### B.    Sufficiency of the Evidence

Petitioner claims his counsel should have argued that the evidence was insufficient to

support the conviction.  Federal habeas review of an insufficiency of the evidence claim is

extremely limited.  A federal court may not disturb a conviction in a state criminal proceeding

unless no rational trier of fact could have found the elements of the offense beyond a reasonable

doubt.  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Gibson v. Collins*, 947 F.2d 780, 781 (5th

Cir. 1991).  The evidence must be viewed in the light most favorable to the verdict.  *Jackson*, 443

U.S. 319; *Gibson*, 947 F.2d at 781.  This standard of review applies in both direct and

circumstantial evidence cases.  *Schrader v. Whitley*, 904 F.2d 282, 287 (5th Cir. 1990).

The indictment charged Petitioner with intentionally and knowingly causing the contact

of C.F.'s sexual organ with his sexual organ, and at the time of the offense, C.F. was younger

than 14 years old.

C.F. testified that she was eight years old at the time of the incident.  (Trial Tr. Vol. 3 at

26.)  She stated Petitioner took her clothes off and his clothes off and put her on a bed.  (*Id*. at

37-44.)  She stated Petitioner touched her "bottom areas" where she goes "pee" and "poo" with

his "bottom areas."  *Id*.  C.F.'s grandmother testified that C.F. told her Petitioner rubbed his penis

on her vagina.  (*Id*. at 59, 67, 69.)  Forensic Interviewer Courtney Golden testified that C.F. made

an outcry of sexual abuse to her, and C.F. stated Petitioner was her abuser.  (*Id*. at 81.)  Police

Officer Jarvis testified that C.F. made a police report to her and told her that Petitioner touched

her vagina with his penis.  (Trial Tr. Vol. 4 at 13-14.)  Viewing this evidence in a light most

favorable to the verdict, the Court finds Petitioner has failed to show the evidence was insufficient to support the conviction.

### C.      Perjured Testimony

Petitioner states counsel should have argued on appeal that Officer Jarvis committed perjury when she testified that she wrote her police report by talking directly with C.F.  Petitioner states C.F. contradicted this testimony by stating that she did not talk to Jarvis.  The record shows, however, that C.F. did not contradict Jarvis's testimony that she spoke to Jarvis for the police report.  C.F. testified she and her mother met Jarvis at the police station and that C.F. told Jarvis about the incident.  (Trial Tr. Vol. 4 at 59-61, 67).  Petitioner also claims Jarvis committed perjury when she testified C.F. told her Petitioner ripped her shirt during the incident, while C.F. testified that Petitioner took her shirt off, but did not rip it.  (*Id*. at 22, 69).  Conflicting or inconsistent testimony, however, is insufficient to establish perjury.  *See Kutzner v. Johnson*, 242 F.3d 605, 609 (5th Cir. 2001.)  Further, contradictory trial testimony is to be resolved by the jury. *See Koch v. Puckett*, 907 F.2d 524, 531 (5th Cir. 1990).  Petitioner's claim should be denied.

### D.      Suppression of Evidence

Petitioner claims his counsel was ineffective because he failed to challenge the suppression of evidence from the state's motion in limine.  As discussed above, this claim is without merit.

### 4.      Actual Innocence

Petitioner claims he is actually innocent.  A claim of actual innocence independent of constitutional infirmity at trial is not cognizable on habeas review.  *Herrera v. Collins*, 506 U.S. 390, 400 (1993); *Creel v. Johnson*, 162 F.3d 385, 395 (5th Cir. 1988).  Further, to be credible, a

claim of actual innocence must be based on reliable evidence *not* presented at trial. *Schlup v. Delo*, 513 U.S. 298, 324 (1995). Actual innocence means "factual innocence" and not mere legal insufficiency. *Bousley v. United States*, 523 U.S. 614, 623-24 (1998); *United States v. Jones*, 172 F.3d 381, 384 (5th Cir. 1999). Thus, where a petitioner asserts his actual innocence of the crime, he must show, as a factual matter, that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence presented in his habeas petition. *Schlup*, 513 U.S. at 327. Petitioner presents no new evidence in support of his claim. His claim should be denied.

5.      **Summary**

Petitioner is lawfully restrained because he has failed to prove that he has been denied a constitutionally protected interest. Accordingly, the state courts' determination to deny relief is not contrary to or does not involve an unreasonable application of clearly established federal law and is not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

**RECOMMENDATION**

This Court recommends that the petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 be DENIED.

Signed this 21st day of April, 2014.

PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

**Findings, Conclusions and Recommendation**
**of the United States Magistrate Judge**          Page -13-

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).